## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. 15-13207 |
| **SCHUYLER DERRELL SANDERS** | SECTION "A" |
| DEBTOR | CHAPTER 7 |

**ALLY FINANCIAL INC.**

        PLAINTIFF                        ADVERSARY NO. 16-01010

**VERSUS**

**SCHUYLER DERRELL SANDERS,
CHARMAINE THOMAS-JOHNSON,
LAW SOLUTIONS CHICAGO, LLC
d/b/a UPRIGHT LAW, LLC, SPERRO, LLC,
and BRIAN FENNER**

        DEFENDANTS

### AMENDED COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE OR THE DISCHARGEABILITY OF CONSUMER DEBT AND FOR OTHER RELIEF

Ally Financial Inc. ("Ally" or "Plaintiff"), plaintiff herein, through undersigned counsel, for its Amended Complaint against Defendant Debtor, Schuyler Derrell Sanders; Defendant Charmaine Thomas Johnson; Defendant Upright Law, LLC; Defendant Sperro, LLC; and Defendant Brian Fenner, alleges as follows:

1. Defendant, Schuyler Derrell Sanders ("Debtor" or "Sanders") is an individual domiciled within the jurisdiction of the United States Bankruptcy Court for the Eastern District of Louisiana residing at 111 Louis Lane, Napoleonville, LA 70390

and is the Debtor in the above titled and numbered Chapter 7 proceeding filed in this Court on November 30, 2015.

2. Defendant Charmaine Thomas-Johnson ("Johnson"), a resident of New Orleans, Louisiana, is the attorney for Sanders and is an attorney associated with Upright Law, LLC, and can be served with process at 3717 Tall Pines Dr., New Orleans, LA 70131.

3. Defendant Law Solutions Chicago, LLC, an Illinois limited liability company doing business in Louisiana under trade name Upright Law, LLC ("Upright Law"), purports to provide legal services, and can be served with process through its registered agent for service of process, Incorp Services, Inc., 3867 Plaza Tower Dr., 1st Floor, Baton Rouge, LA, 70816.

4. Defendant Sperro, LLC, a/k/a Sperro Towing and Recovery, ("Sperro") is an Indiana limited liability company, purports to be in the business of providing towing and storage services, and can be served with process through its registered agent for service of process, Michael D. Head, 212 West 10th Street, Suite D-280, Indianapolis, Indiana 46202.

5. Defendant Brian Fenner ("Fenner") is an individual residing in Camby, Indiana, operates and controls Sperro, LLC, and can be served with process at 10923 Glenayr Drive, Camby, Indiana 46113-8914.

6. Plaintiff, Ally Financial Inc., (the "Plaintiff" or "Ally") is a Delaware corporation authorized to conduct business in the state of Louisiana and a secured creditor of the Debtor.

7. This is an adversary proceeding to determine the dischargeability of the Debtor and a debt due to Plaintiff and for other relief as prayed for herein below.

8. Plaintiff's claims arise under 11 U.S.C. Section 727 as Plaintiff seeks an order denying a discharge to Debtor; the Debtor has acted with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, have transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the debtor, within one year before the date of the filing of the petition.

9. Plaintiff's claims arise under 11 U.S.C. Section 523(a), as the Plaintiff seeks an order denying the dischargeability of the Debtor's obligations to the Plaintiff. The Debtor's actions, as described below, entitle the Plaintiff to a determination that the Debtor's obligations to the Plaintiff are excepted from discharge pursuant to Section 523(a)(2), (4) and/or (6).

10. Plaintiff's claims arise, in part, under 11 U.S.C. Sections 105(a), 329, 526, 528, 707 and Rules 2016 and 2017 of the Federal Rules of Bankruptcy Procedure.

11. This is a core proceeding 28 U.S.C. §1334.

12. This Court has jurisdiction pursuant to 28 U.S.C. §157 and §1334.

**BACKGROUND FACTS COMMON TO EACH CLAIM FOR RELIEF**

13. On February 22, 2014, the Debtor and Daisy O. Cooks executed a Retail Installment Sales Contract ("Contract") with Trapp Cad-Chev, Inc., of Houma, Louisiana, a copy of which is attached hereto as **Exhibit "A"**, for the purchase of a new 2014 Chevrolet Malibu bearing VIN 1G11C5SL0EF216606 ("Vehicle") in the amount of $44,056.08 representing the total of payments due. Trapp Cad-Chev, Inc. assigned the Contract to Ally as reflected at the bottom of the first page of **Exhibit "A"**.

14. Ally thereafter perfected its first priority security interest in the Vehicle by having its lien noted on the Electronic Title Document for the Vehicle, a copy of which is attached hereto as **Exhibit "B"**.

15. Pursuant to the terms of the Contract, the Debtor and Daisy O. Cooks are obligated to pay Ally the sum of $611.89 per month for 72 months, commencing April 9, 2014. Daisy O. Cooks passed away in December of 2014 leaving Debtor solely responsible for the obligations under the Contract.

16. Prior to the filing of this bankruptcy case, the Defendant defaulted on the Contract with Ally. The account is currently past due under the Contract for the August 9, 2015 payment forward.

17. Upon information and belief, the Debtor met or conferred with attorneys and representatives of Upright Law, LLC and Johnson (collectively "Debtor's Counsel") prior to October 13, 2015 to discuss filing bankruptcy. Plaintiff believes that the Debtor had the financial ability to pay Debtor's Counsel the standard legal fee for providing him with bankruptcy related legal services.

18. Upon information and belief, Debtor (either directly or through Debtor's Counsel) was contacted by Brian Fenner of Sperro, LLC to negotiate payment of Debtor's legal fees and filing costs for handling the Debtor's chapter 7 bankruptcy in exchange for voluntarily transferring the Vehicle, to the detriment of the Plaintiff and its interests in the Vehicle.

19. Upon information and belief, on or about October 13, 2015, Debtor voluntarily, and upon the advice of Debtor's Counsel, entered into a "Transportation and Storage

4

Authorization Agreement" (the "TSAA") with Sperro. Attached hereto as **Exhibit "C"** is a copy of what Ally believes to be a true and correct copy of the TSAA.

20. Under the terms of the TSAA, Sperro and/or Fenner took possession of the Vehicle with the consent and cooperation of the Debtor and transported the Vehicle out of the state of Louisiana.

21. Under the terms of the TSAA, Sperro and/or Fenner took possession of the Vehicle at the direction of the Debtor and transported the Vehicle out of the state of Louisiana.

22. The TSAA specifically provided for the Vehicle to be removed from the State of Louisiana to an alleged storage facility in Indianapolis, Indiana. The TSAA also obligated the Debtor to pay the following:

   a. A $75.00 vehicle load fee and a $75.00 vehicle unload fee;
   b. A charge of $1.85 per mile to tow Vehicle to Indiana from Louisiana;
   c. A storage charge of $45.00 per day;
   d. A late charge of 10% of the monthly storage fee; and
   e. A one-time Preventative Maintenance Care Package charge of $250.00 incurred at the signing of the TSAA.

   There was no legitimate business purpose for any of these conditions of the TSAA.

23. The TSAA specifically provides that the Debtor would be in default of the TSAA if the Debtor failed *"...to pay storage fees or defaults on any other term or condition of this Agreement."* Upon information and belief, Debtor deliberately executed the TSAA with absolutely no intention of ever recovering the Vehicle from Sperro or paying any of the alleged charges or fees enumerated under the TSAA.

24. Prior to the removal of the Vehicle from the State of Louisiana, Ally was unaware (a) of the existence of the TSAA; (b) of the transfer of the Vehicle from the possession of the Debtor to the possession of Sperro and/or Fenner, or (c) the removal of the Vehicle from the State of Louisiana.

25. At no time did Ally consent to (a) the terms and conditions of the TSAA; (b) the transfer of the Vehicle from the possession of the Debtor to the possession of Sperro and/or Fenner, or (c) the removal of the Vehicle from the State of Louisiana.

26. After the transfer of the Vehicle to Sperro and/or Fenner under the TSAA, Ally was unable to recover the Vehicle from the Debtor. The Debtor deliberately failed to list the Vehicle as an asset on his bankruptcy petition; deliberately failed to identify Ally as a secured creditor on his bankruptcy schedules; deliberately misrepresented Ally as an unsecured creditor for the full amount of Ally's claim on his bankruptcy schedules; and deliberately misrepresented that the Vehicle had been repossessed by Ally on his bankruptcy schedules.

27. Subsequent to the removal of the Vehicle from the possession of the Debtor and from the State of Louisiana, Ally learned that Sperro claimed storage and other possessory liens in the Vehicle under the terms of the TSAA, such that the lien asserted by Sperro had alleged priority over the lien of Ally. Sperro refused to tender possession of the Vehicle to Ally after demand.

28. Upon information and belief, Sperro and/or Fenner has sold the Vehicle to a third party (the "Sham Sale"), pursuant to the terms of the TSAA executed by the Debtor such that Ally's security interest in the Vehicle has been damaged, destroyed, harmed or reduced in value.

29. At the time of the transfer of possession of the Vehicle by the Debtor to Sperro and/or Fenner on or about October 13, 2015, the Debtor (a) had no legitimate need for any storage services by Sperro; (b) had no intent to make any payments to Sperro; and (c)

6

had no intent to recover the Vehicle from Sperro prior to the filing of this bankruptcy case.

30. The Sham Sale was contemplated by the express terms of the TSAA, and was explicitly agreed to by the Debtor when the Debtor executed the TSAA on or about October 13, 2015. The Debtor had the intent or expectation that Sperro would sell the Vehicle at the Sham Sale at some point in the future, after Sperro had paid the bankruptcy filing fees and bankruptcy attorney fees of the Debtor.

31. Pursuant to the Debtor's Statement of Financial Affairs, Part 7 No.16, filed in the underlying bankruptcy case on December 10, 2015, Upright Law LLC, and/or Sperro paid the Debtor's attorney $1,450.00 in legal fees on behalf of the Debtor and the filing fee of $335.00 for the initiation of the Debtor's Chapter 7 Case. A true and correct copy of the Debtor's Petition is attached as **Exhibit "D"** hereto.

32. The Debtor's Statement of Intention in the Petition fails to reference Ally, the Debtor's intentions as to the Vehicle, or the location or custodian of the Vehicle. The Debtor has never surrendered the Vehicle to Ally, Ally has never repossessed the Vehicle (despite the Debtor's representations to the contrary in his bankruptcy schedules), and Debtor's actions could potentially result in Ally losing its security interests in the Vehicle.

### COUNT I: DENIAL OF DISCHARGE UNDER 11 U.S.C. §727

33. Plaintiff re-alleges and re-states each and every allegation contained within Paragraphs 1 through 32, as if fully set forth herein.

34. The transfer of the Vehicle to Sperro and/or Fenner under the terms of the TSAA was for the purpose of hindering, defrauding, or delaying Ally both in its efforts to recover

7

the Vehicle and in its efforts to realize upon the value of the Vehicle upon the exercise of Ally's contractual rights and rights under Louisiana law.

35. Debtor's discharge should be denied pursuant to 11 U.S.C. §727(a)(2)(A) based upon Debtor's actions insofar as Debtor with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the Debtor, within one year before the date of the filing of the petition.

### COUNT II: DENIAL OF DISCHARGEABILITY UNDER 11 U.S.C. §523

36. Plaintiff re-alleges and re-states each and every allegation contained within Paragraphs 1 through 32, as if fully set forth herein.

37. The actions of the Debtor as set forth herein are such that the obligations of Debtor under the Contract to Ally should be excepted from discharge under 11 U.S.C. Section 523(a)(2), (4) and (6), such amounts including $30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

### COUNT III: INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

38. Plaintiff re-alleges and re-states each and every allegation contained within Paragraphs 1 through 32, as if fully set forth herein.

39. Sanders, Johnson, Upright Law, Sperro and Fenner engaged in a scheme to have Sperro and/or Fenner pay the attorney fees associated with the filing of Debtor's bankruptcy case in exchange for Debtor assigning rights in the Vehicle to Sperro,

transporting the Vehicle outside of the State of Louisiana without Plaintiff's permission, and purportedly grant Sperro a lien in the Vehicle for services that were not necessary or appropriate.

40. The actions of Johnson, Upright Law, Sperro and Fenner were intended to interfere and did interfere with the Contract between Ally and Sanders.

41. Johnson, Upright Law, Sperro and Fenner have caused damage and expense to Plaintiff as result of their illegal and improper actions.

42. Plaintiff has been damaged as a result of Defendants' actions in the amount of $30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

## COUNT IV: FRAUD

43. Plaintiff re-alleges and re-states each and every allegation contained within Paragraphs 1 through 32 and 38 through 42, as if fully set forth herein.

44. Sanders, Johnson, Upright Law, Sperro and Fenner at all relevant times knew that Ally possessed a properly perfected, first priority lien on the Vehicle, arising out of the purchase of the Vehicle by Sanders and Cooks.

45. At the time that Sanders entered into the TSAA, he was insolvent and unable to pay his debts as they became due.

46. At the time that Sanders entered into the TSAA, Sanders had engaged Johnson and Upright Law to provide legal services with respect to a prospective bankruptcy filing by Sanders.

9

47. Sanders entered into the TSAA with Sperro and Fenner not for the purpose of providing legitimate towing and storage services for the Vehicle, but instead to obtain pre-petition financing for the payment of Sander's legal and filing fees to Upright Law and Johnson and to transfer to Sperro and Fenner *"an express security interest is hereby acknowledged on this vehicle and Sperro LLC has the right to claim a lien to recover transport/storage and other charges incurred pursuant to Indiana Civil Code."*, in violation of the Contract, Section 2.b. "**YOUR OTHER PROMISES TO US – Using the vehicle**".

48. At the time Sanders entered into the TSAA with Sperro and Fenner, Upright Law and Johnson knew that Sperro and Fenner were not going to provide legitimate towing and storage services for the Vehicle, but instead that the TSAA was entered into as a sham agreement to allow Sanders to obtain pre-petition financing to pay his legal and filing fees to Upright Law and Johnson.

49. On November 17, 2015, Sperro and Fenner sent to Sanders and Ally a "Notification of Lien," a true and correct copy of which is attached as **Exhibit E** hereto (the "Notification of Lien").

50. The Notification of Lien falsely stated that there were reasonable fees owing with regard to the towing and storage of the Vehicle by Sperro and Fenner, and that Sanders and/or Ally had fifteen (15) days to pay $4,425.95, the amounts claimed by Sperro and Fenner, or *"our company, as the holder of a valid mechanic's lien under Indiana Code Section 9-22-6-2, may sell the Vehicle at a public auction to the highest and best bidder."*

51. The Notification of Lien also purported to give Sanders and Ally notice that the Vehicle would be sold at auction, on December 4, 2015 at 6:30am to satisfy the purported towing and storage liens asserted by Sperro and Fenner/.

52. Sperro and Fenner did not in fact provide any legitimate towing or storage services for the Vehicle, but instead acted to remove the Vehicle from the state of Louisiana in connection with the fraudulent scheme to pay Sanders' bankruptcy legal and filing fees to Upright Law and Johnson.

53. The statements contained in the Notification of Lien were false, as the TSAA was not entered into for legitimate towing and storage services, but instead as a sham to provide pre-petition financing for the payment of the legal and filing fees owed by Sanders to Upright Law and Johnson.

54. Sanders entered into the sham TSAA for the purpose of making false statements to Ally with regard to the validity and existence of the towing and storage services being purportedly provided by Sperro and Fenner, with the intent that Ally rely, to its detriment, on those false statements.

55. Sperro and Fenner knew that Sanders had entered into the sham TSAA for the purpose of making false statements to Ally with regard to the validity and existence of the towing and storage services being purportedly provided by Sperro and Fenner, and made the false statements contained in the Notification of Lien letter to Ally, with the intent that Ally rely upon those false statements.

56. Sanders, Johnson, Upright Law, Sperro and Fenner all entered into the sham arrangement, starting with the TSAA, with the intent of making false statements to Ally with respect to the actual relationship between and among Sanders, Johnson,

Upright Law, Sperro and Fenner, such that Ally would rely to its detriment on the false statements being made by Sanders, Johnson, Upright Law, Sperro and Fenner.

57. The sham arrangement created by Sanders, Johnson, Upright Law, Sperro and Fenner, and the actions that each of these parties took, constitutes a fraud upon Ally.

58. Ally has been damaged as a result of Defendants' actions in the amount of $30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

## COUNT V: FRAUD BY OMMISSION, SILENCE AND INACTION

59. Plaintiff re-alleges and re-states each and every allegation contained within Paragraphs 1 through 32, 38 through 42, and 43 through 58 as if fully set forth herein.

60. Sander's suppression of the existence and true intent of the TSAA by his silence and inaction omitted and concealed from Ally the true fraudulent nature of the sham arrangement between and among himself, Johnson, Upright Law, Sperro and Fenner, all of who co-conspired with Sanders to omit and conceal.

61. At the time that Sanders entered into the TSAA, Sanders was insolvent and unable to pay his debts as they became due.

62. At the time that Sanders entered into the TSAA, Sanders had engaged Johnson and Upright Law to provide legal services with respect to a prospective bankruptcy filing by Sanders.

63. Johnson and Upright Law were aware, prior to the execution of the TSAA by Sanders, that Sanders was contemplating bankruptcy, that Sanders did not have the

12

ability to pay his debts as they became due, that the liabilities of Sanders exceeded his assets, that Sanders had no legitimate need for any of the services detailed in the TSAA, and that the primary, if not sole, purpose of the TSAA was to harm Ally's interests in the Vehicle for their own financial benefit.

64. Sanders and third parties Johnson, Upright Law, Sperro and Fenner, by their silence, suppression of the truth, and inaction, failed to inform Ally of their intent to violate the terms of the Contract by entering into the TSAA thereby seeking to obtain an unjust advantage over and cause loss to Ally, despite the fact that they knew or should have known the fraudulent results when Sanders executed the TSAA, that the Vehicle was going to be transported out of the state of Louisiana, that there was no legitimate purpose for the TSAA, and that the primary, if not sole, purpose of the TSAA was to harm Ally's interests in the Vehicle for their own financial benefit.

65. Sanders had a contractual duty to make these disclosures to Ally based upon the express terms of the Contract.

66. Defendants Upright Law and Johnson, as the law firm and attorney providing pre-bankruptcy counseling for Sanders, had an obligation to make these disclosures to Ally and to refrain from suppressing the truth, making false and misleading statements with respect to the Vehicle.

67. Defendants Sanders, Johnson, and Upright Law intentionally concealed from Ally the true, fraudulent nature of the sham arrangement between and among Defendants Sanders, Johnson, Upright Law, Sperro and Fenner.

68. Had Ally known that Sanders was about to execute the TSAA and transfer the Vehicle to Sperro and/or Fenner, Ally would have acted differently, including taking steps to protect its interests in the Vehicle.

69. As a result of the fraudulent concealment of the existence and purpose of the TSAA, and the transfer of the Vehicle to Sperro and/or Fenner, Ally has suffered damages including $30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

### COUNT VI: CONSPIRACY TO COMMIT FRAUD AND CONSPIRACY TO CONVERT PROPERTY

70. Plaintiff re-alleges and re-states each and every allegation contained within Paragraphs 1 through 32, 38 through 42, and 43 through 58, and 59 through 69 as if fully set forth herein.

71. Sanders, Johnson, Upright Law, Sperro and Fenner acted in combination in connection with (a) the execution of the TSAA, (b) the transfer of the Vehicle to Sperro and/or Fenner, (c) the transport of the Vehicle outside of the state of Louisiana, (d) the payment by Sperro of the bankruptcy legal and filing fees to Johnson and Upright Law on behalf of Sanders, and (e) the sale of the Vehicle and attempted extinguishment of Ally's lien in the Vehicle.

72. The execution of the TSAA and the transfer of the Vehicle from Sanders to Sperro and/or Fenner, were in violation of the express terms of the Contract.

73. At the time of the execution of the TSAA and the transfer of the Vehicle from Sanders to Sperro and/or Fenner, Defendants Sanders, Johnson, Upright Law, Sperro

and Fenner knew, or should have known, that these actions were in violation of both the Louisiana Civil Code, including but not limited to Articles 1953, 1954, and 1956, and the express terms of the Contract.

74. At the time of the execution of the TSAA, the transfer of the Vehicle from Sanders to Sperro and/or Fenner, and the transport of the Vehicle out of the state of Louisiana, Sanders, Johnson, Upright Law, Sperro and Fenner each intended: (a) that Sanders execute the TSAA, (b) that Sanders turn over the Vehicle to Sperro and/or Fenner, (c) that Sperro and/or Fenner transport the Vehicle outside of the state of Louisiana, (d) that Sperro pay the bankruptcy legal and filing fees of Sanders to Johnson and Upright Law, and (e) that Sperro and/or Fenner sell the Vehicle and attempt to extinguish Ally's lien in the Vehicle.

75. Sanders, Johnson, Upright Law, Sperro and Fenner have combined in concert to accomplish an unlawful purpose, or to accomplish a lawful purpose through unlawful means, such that Sanders, Johnson, Upright Law, Sperro and Fenner are jointly and severally liable in conspiracy to Plaintiff for the damages caused by this conspiracy.

76. The transfer of the Vehicle to Sperro and/or Fenner under the terms of the TSAA was part of a fraudulent scheme designed to harm the interests of Ally in the Vehicle.

77. Ally has been damaged as a result of the actions of Sanders, Johnson, Upright Law, Sperro and Fenner in the amount of $30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

78. Sanders' discharge should be denied pursuant to 11 U.S.C. Section 727(a)(2)(A) based upon Debtor's actions insofar as Debtor, in violation of Louisiana law, and with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the Debtor, within one year before the date of the filing of the petition.

79. The actions of Sanders, as set forth herein are such that the obligations of the Debtor under the Contract to Ally should be excepted from discharge under 11 U.S.C. Section 523(a)(2), (4) and (6), such amounts including $30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts.

80. The deadline for filing objections to discharge and dischargeability in Debtor's bankruptcy case was March 7, 2016, the day of the filing of the original Complaint which is amended hereby.

**WHEREFORE**, Ally Financial Inc. prays that this Court enter judgment in favor of Plaintiff, Ally Financial Inc., as follows:

(a) Against the Defendant, Schuyler Derrell Sanders, denying his discharge pursuant to 11 U.S.C. Section 727(a)(2)(A);

(b) Against the Defendant, Schuyler Derrell Sanders, excepting his obligations to Ally from discharge under 11 U.S.C. Sections 523(a)(2), (4) and (6) and awarding judgment in favor of Ally in the amounts due under the Contract, including

$30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts;

(c) As a result of their intentional interference with Ally's contractual relations, against Johnson, Upright Law, Sperro and Fenner, jointly and severally, in favor of Ally in the amounts due under the Contract, including $30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts;

(d) As a result of their fraud upon Ally, against Sanders, Johnson, Upright Law, Sperro and Fenner, jointly and severally, in favor of Ally in the amounts due under the Contract, including $30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts;

(e) As a result of their fraud by omission, silence, and inaction with respect to Ally, against Sanders, Johnson, Upright Law, Sperro and Fenner, jointly and severally, in favor of Ally in the amounts due under the Contract, including $30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts;

(f) As a result of their conspiracy to commit fraud upon Ally and to convert the property of Ally, against Sanders, Johnson, Upright Law, Sperro and Fenner, jointly and severally, in favor of Ally in the amounts due under the Contract, including $30,163.53, plus accrued finance charges from the date of this complaint (March 7, 2016) at 12.40% per annum, plus legal fees and all costs incurred attempting to recover possession of the Vehicle, including additional legal fees associated with those efforts; and

(g) Granting Ally Financial Inc., such other and further relief as this Court deems just and equitable.

       THE SUNDMAKER FIRM, L.L.C.

       By: /s/Arthur S. Mann, III
           ARTHUR S. MANN III (#9094)
           EARL F. SUNDMAKER, III (#24226)
           GREGORY J. WALSH (#25921)
           1027 Ninth St.
           New Orleans, LA 70115
           Telephone: (504) 568-0516
           Fax: (504) 568-0519
           arthur@sundmakerfirm.com
           **Attorneys for Ally Financial Inc**.

**PLEASE ISSUE SUMMONS TO**:

Schuyler Derrell Sanders
111 Louis Lane
Napoleonville, LA 70390

Charmaine Thomas-Johnson
3717 Tall Pines Dr.
New Orleans, LA 70131

*(Service instructions continue on following page).*

Law Solutions Chicago, LLC
d/b/a Upright Law, LLC,
through its registered agent for service of process,
Incorp Services, Inc.
3867 Plaza Tower Dr.
1st Floor
Baton Rouge, LA, 70816


Sperro, LLC, a/k/a Sperro Towing and Recovery,
an Indiana limited liability company
through its registered agent for service of process
Michael D. Head
212 West 10th Street
Suite D-280
Indianapolis, Indiana 46202

Brian Fenner
10923 Glenayr Drive
Camby, Indiana 46113-8914